OPINION

OF THE JUSTICES OF THE SUPREME JUDICIAL COURT
GIVEN UNDER THE PROVISIONS OF SECTION 3
OF ARTICLE VI OF THE CONSTITUTION
\* \* ·\* \* ·\* \*

QUESTIONS PROPOUNDED BY THE SENATE IN AN ORDER
DATED MAY 7, 1959
ANSWERED MAY 18, 1959

SENATE ORDER PROPOUNDING QUESTIONS
STATE OF MAINE

In Senate, May 7, 1959

WHEREAS, two bills, one entitled "An Act Classifying Certain Waters in Meduxnekeag River Basin," (House Paper 403, Legislative Document 587), the other entitled "An Act Relating to the Classification of Prestile Stream in Aroostook County," (House Paper 661, Legislative Document 954) are pending before the 99th Legislature and it is important that the Legislature be informed as to the validity and constitutionality of the proposed bills; and

WHEREAS, the effect of each Legislative Document is alike in that, if enacted, each would lower the classification (permit the discharge of a greater amount of pollution) of a portion of the respective waters, which waters flow across the international boundary into Canada; and

WHEREAS, it appears to the Senate of the 99th Legislature that the following is an important question of law and the occasion a solemn one; now, therefore, be it

ORDERED, that in accordance with the provisions of the Constitution of the State, the Justices of the Supreme Judicial Court are hereby respectfully requested to give this Legislature their opinion on the following questions:

## 1.

Do any of the provisions of House Paper 403, Legislative Document 587, conflict with the provisions of the Treaty Between the United States and Great Britain, relative to Boundary waters Between the United States and Canada, (signed January 11, 1909), in violation of Article VI, Clause 2, of the Constitution of the United States?

## 2.

Do any of the provisions of House Paper 661, Legislative Document 954, conflict with the provisions of the Treaty Between the United States and Great Britain, relative to Boundary Waters Between the United States and Canada, (Signed January 11, 1909), in violation of Article VI, Clause 2, of the Constitution of the United States.

## 3.

Would either House Paper 403, Legislative Document 587, "An Act Classifying Certain Waters in Meduxnekeag River Basin," or House Paper 661, Legislative Document

954, "An Act Relating to the Classification of Prestile Stream in Aroostook County," if enacted by the Legislature, be valid and constitutional under the Maine and United States Constitutions?

In Senate Chamber
May 7, 1959
READ AND PASSED
Chester T. Winslow
Secretary

A true copy.   Attest
CHESTER T. WINSLOW
Secretary of the Senate

Name:   Briggs

County:   Aroostook

# NINETY-NINTH LEGISLATURE

**Legislative Document**                                      **No. 587**

H. P. 403       House of Representatives, February 10, 1959
Referred to the Committee on Natural Resources. Sent up for concurrence and ordered printed.
HARVEY R. PEASE, Clerk.
Presented by Mr. Ervin of Houlton.

## STATE OF MAINE

IN THE YEAR OF OUR LORD NINETEEN
HUNDRED FIFTY-NINE

## AN ACT Classifying Certain Waters in Meduxnekeag River Basin.

Be it enacted by the People of the State of Maine, as follows:

**R. S., c. 79, § 15, amended.** Subsection XI under the caption, "Meduxnekeag River Basin" of section 15 of chap-

ter 79 of the Revised Statutes, as enacted by section 4 of chapter 426 of the public laws of 1955, is repealed and the following subsections enacted in place thereof:

'XI. Meduxnekeag River, main stem, from the bridge at gravel pit entrance just upstream of the compact area in Houlton to a point 1,500 feet downstream from the Highland Avenue Bridge—Class C.

XII. Meduxnekeag River, main stem, from a point 1,500 feet downstream of the Highland Avenue Bridge to the international boundary—Class D.'

Transmitted by Director of Legislative Research pursuant to joint order.

## NINETY-NINTH LEGISLATURE

**Legislative Document**                                **No. 954**
H. P. 661          House of Representatives, February 25, 1959

Referred to the Committee on Natural Resources. Sent up for concurrence and ordered printed.

                    HARVEY R. PEASE, Clerk

Presented by Mr. Jewell of Monticello.

## STATE OF MAINE

### IN THE YEAR OF OUR LORD NINETEEN HUNDRED FIFTY-NINE

### AN ACT Relating to the Classification of Prestile Stream in Aroostook County.

Be it enacted by the People of the State of Maine, as follows:

**R. S., c. 79, §15, amended.** Subsections II and III under the caption "Meduxnekeag River Basin" of section 15 of

chapter 79 of the Revised Statutes, as enacted by section 4 of chapter 426 of the public laws of 1955, are amended to read as follows:

'II. Prestile Stream, segments and tributaries thereof, not otherwise defined, **except the main stem of the Prestile Stream below the bridge at Mars Hill,** above the international boundary—Class B-1.

**III.** Prestile Stream, main stem, from the bridge at Westfield to the ~~international boundary in the Town of Bridgewater~~ **bridge at Mars Hill**—Class B-2. ~~The provisions of this subsection shall become effective on June 30, 1956.~~'

### ANSWERS OF THE JUSTICES

To the Honorable Senate of the State of Maine:

In compliance with the provisions of Section 3 of Article VI of the Constitution of Maine, we, the undersigned Justices of the Supreme Judicial Court, have the honor to submit the following answers to the questions propounded on May 7, 1959.

QUESTION (1): Do any of the provisions of House Paper 403, Legislative Document 587, conflict with the provisions of the Treaty Between the United States and Great Britain, relative to Boundary Waters Between the United States and Canada, (signed January 11, 1909), in violation of Article VI, Clause 2, of the Constitution of the United States?

ANSWER: We answer in the negative.

QUESTION (2): Do any of the provisions of House Paper 661, Legislative Document 954, conflict with the provisions of the Treaty Between the United States and Great Britain, relative to Boundary Waters Between the United States and Canada, (signed January 11, 1909), in violation of

Article VI, Clause 2, of the Constitution of the United States?

ANSWER: We answer in the negative.

The first and second questions relating to L. D. 587 "An Act Classifying Certain Waters in Meduxnekeag River Basin" and L. D. 954 "An Act Relating to the Classification of Prestile Stream in Aroostook County" present identical issues, and may be answered together. "The effect of each Legislative Document (to use the words of the preamble to the questions) is alike in that, if enacted, each would lower the classification (permit the discharge of a greater amount of pollution) of a portion of the respective waters, which waters flow across the international boundary into Canada; . ."

The Meduxnekeag River and Prestile Stream run from Maine into Canada, and thus are "waters flowing across the boundary" under the Treaty. The portions of both streams covered by the proposed legislation are now classified waters by action of the Legislature in 1955. Under L. D. 587, Meduxnekeag River from a point in Houlton to the boundary would be changed from Class C to Class D; and under L. D. 954, the main stem of Prestile Stream from below the bridge at Mars Hill to the boundary would be changed from Class B-2 to unclassified waters. See R. S., c. 79 as amended in 1957, entitled "Water Improvement Commission"; Sec. 2 Standards of classification; Sec. 15 Meduxnekeag River Basin, Par. III, Prestile stream, and Par. XI Meduxnekeag River.

The Treaty is "the supreme law of the land," and we are governed by its items in the event the state law is in conflict therewith. Article VI, clause 2, of the Federal Constitution reads:

"This Constitution, and the laws of the United States which shall be made in pursuance thereof;

and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any state to the contrary notwithstanding."

The Supreme Court of the United States has stated the principle in these words:

"Treaties are to be liberally construed so as to effect the apparent intention of the parties. . . . When a treaty provision fairly admits of two constructions, one restricting, the other enlarging rights which may be claimed under it, the more liberal interpretation is to be preferred, . . and as the treaty-making power is independent of and superior to the legislative power of the states, the meaning of treaty provisions so construed is not restricted by any necessity of avoiding possible conflict with state legislation and when so ascertained must prevail over inconsistent state enactments. . . . When their meaning is uncertain, recourse may be had to the negotiations and diplomatic correspondence of the contracting parties relating to the subject matter and to their own practical construction of it. . ." *Nielsen* v. *Johnson,* 49 S. Ct. 223, 279 U. S., 47, 51.

"But state law must yield when it is inconsistent with or impairs the policy or provisions of a treaty or of an international compact or agreement." *United States* v. *Pink* (N. Y.) 62 S. Ct. 552, 566, 315 U. S. 203.

See also U. S. Code Annotated Constitution, Art. 6, cl. 2, Treaties.

The only provision of the Treaty specifically relating to pollution reads:

"It is further agreed that the waters herein defined as boundary waters and waters flowing across the boundary shall not be polluted on either

side to the injury of health or property on the other." Art. IV.

This, it should be noted, is a statement of the policy of the governments. No machinery for enforcement is set forth. In practice, questions involving pollution have been referred to the International Joint Commission, established under the Treaty for investigation and report under Article IX, which reads:

> "The High Contracting Parties further agree that any other questions or matters of difference arising between them involving the rights, obligations, or interests of either in relation to the other or to the inhabitants of the other, along the common frontier between the United States and the Dominion of Canada, shall be referred from time to time to the International Joint Commission for examination and report, whenever either the Government of the United States or the Government of the Dominion of Canada shall request that such questions or matters of difference be so referred."

In *Boundary Waters Problems of Canada and the United States,* Bloomfield and Fitzgerald, (1958) on page 20 it is stated:

> "True, pollution is expressly mentioned in paragraph 2 of Article IV which records an agreement between the Parties to the Treaty to the effect that not only boundary waters, but also 'waters flowing across the boundary, shall not be polluted on either side to the injury of health or property on the other.' But this provision does not confer jurisdiction over pollution on the Commission. In fact, the Pollution of Boundary Waters references (Nos. 4, 53 and 55) were brought before the Commission under the power of investigation conferred on it by Article IX."

On the one hand, there are the state statutes dealing with the problem of pollution and the classification of waters,

and the proposed amendments (L. D. 587 and L. D. 954) permitting an increase in pollution. On the other hand, and controlling, there is the Treaty with its stated policy against pollution "on either side to the injury of health or property on the other."

In our opinion there is nothing in either legislative document that conflicts with the Treaty. The People, through the Legislature, in classifying, reclassifying or removing from classification waters of the Meduxnekeag River Basin within the state, in no way create or authorize pollution "to the injury of health or property" in Canada. Whether such injuries result from pollution in Maine is a matter for determination when and if claim thereof is made in proper proceedings.

Injured parties are granted certain rights under Article II of the Treaty, which reads:

> "Each of the High Contracting Parties reserves to itself or to the several State Governments on the one side and the Dominion or Provincial Governments on the other as the case may be, subject to any treaty provisions now existing with respect thereto, the exclusive jurisdiction and control over the use and diversion, whether temporary or permanent, of all waters on its own side of the line which in their natural channels would flow across the boundary or into boundary waters; but it is agreed that any interference with or diversion from their natural channel of such waters on either side of the boundary, resulting in any injury on the other side of the boundary, shall give rise to the same rights and entitle the injured parties to the same legal remedies as if such injury took place in the country where such diversion or interference occurs; but this provision shall not apply to cases already existing or to cases expressly covered by special agreement between the parties hereto."

It would not be appropriate in answering the questions submitted to discuss the legal remedies which may be open to injured parties under this Article.

QUESTION (3) : Would either House Paper 403, Legislative Document 587, "An Act Classifying Certain Waters in Meduxnekeag River Basin," or House Paper 661, Legislative Document 954, "An Act Relating to the Classification of Prestile Stream in Aroostook County," if enacted by the Legislature, be valid and constitutional under the Maine and United States Constitutions?

ANSWER: We are satisfied the question was asked only with reference to the validity and constitutionality of L. D. 587 and L. D. 954 in light of the Treaty. If we are correct in this view we have, we believe, sufficiently covered the issues in our answers to the first and second questions.

If, however, it was intended that we give an advisory opinion generally upon the constitutionality of the proposed legislation under both the Maine and Federal Constitutions, or either, we must respectfully decline to answer. Such a question would obviously require an opinion, not upon the amendments in classification of waters here proposed, but upon the entire legislative program relating to pollution, classification of waters and other related matters found in R. S., c. 79. The question is too general to be a proper vehicle for such a purpose.

Dated at Augusta, Maine, this eighteenth day of May, 1959.

Respectfully submitted:

ROBERT B. WILLIAMSON
DONALD W. WEBBER
WALTER M. TAPLEY, JR.
FRANCIS W. SULLIVAN
F. HAROLD DUBORD
CECIL J. SIDDALL